**County of Cook, Appellee, v. City of Chicago, Appellant.**

**Gen. No. 27,521.**

INJUNCTIONS—*sufficiency of bill to enjoin interference by city with unlicensed construction of county jail within city.* A bill by Cook County to enjoin the City of Chicago from interfering with construction of a jail within the city limits by the county is sufficient against general demurrer based on the contention that the county's refusal to submit to city supervision under its building ordinances may result in the construction of a fire trap and that the ordinances are fair and reasonable and that the city has the right of supervision under its general police power, where the bill alleges that the plans and specifications were prepared by the county architect, that the building is "suitable, sanitary, safe and proper in all respects" and answers every need and requirement possible for the health, safety and convenience of the inmates and that it will be impossible to comply with the building ordinances in its construction, where the ordinances are not before the court and the allegations of the bill are not objected to as conclusions.

Appeal by defendant from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed April 11, 1923. Rehearing denied April 24, 1923.

SAMUEL A. ETTELSON, for appellant; CARL J. APPELL and ALBERT H. VEEDER, of counsel.

ROBERT E. CROWE and GEORGE E. GORMAN, for appellee; HAYDEN N. BELL, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The County of Cook filed a bill against the City of Chicago praying that the city be enjoined from interfering with the construction of a building to be used by the county as a jail for juvenile offenders. The defendant city filed a general demurrer to the bill which was overruled. It elected to stand by its demurrer and a decree was entered in accordance with the prayer of the bill, to reverse which the defendant prosecutes this appeal. The question, therefore, for our determination is the sufficiency of the bill.

The material allegations of the bill, so far as it is necessary for us to state them, are that on October 4, 1919, the Board of Commissioners of Cook County passed an order and resolution declaring that it was necessary that a new detention home or place of confinement for dependent, delinquent and truant children be established and constructed; that in the opinion of the board this would require the sum of $1,000,000, and it was deemed necessary to issue bonds to provide funds to construct and equip the building; that it was necessary to assess taxes in excess of 50 per cent on each $100 of valuation on property in the County of Cook and it was ordered that the matter be submitted to the legal voters of Cook County at a special election to be held November 4, 1919, whether gold bonds in the sum of $1,000,000 be issued for such purpose and

whether such amount should be subsequently raised by taxation. It is further alleged that at the election the proposition received a majority of the votes cast, and it was, therefore, duly and officially declared carried; that the county afterwards acquired certain described real estate upon which to construct the building or jail. It further alleged that the county was engaged through its contractors and agents in the erection of the home or jail on the premises according to plans and specifications prepared for that purpose by the county architect; that the building was to be used as a jail for juveniles who were prohibited from being confined in jails with adult criminals; that the plans and specifications were "suitable, sanitary, safe and proper in all respects and answer every need and requirement possible for the health, safety and convenience of the inmates of said home or jail consistent with their safekeeping and the necessary discipline of said jail"; that the defendant City of Chicago claims the right of supervision over the plans and the construction of the jail under its general police power because the building is erected within the limits of the city; that defendant claims the right to change the plans and supervise the construction of the building, and further claims the right to prevent the erection or construction of the home or jail unless it is built under defendant's supervision and in pursuance of a permit issued by the city, and for which it demands a fee from the complainant of $1,100; that the jail or home is necessary to be built at once owing to the overcrowded condition and inadequate capacity of present buildings; that the city has passed a number of general ordinances which are now in effect governing the construction of city jails and of other buildings erected by private owners; that the requirements in these ordinances for jails built by the city are not suited to the requirements of the jail in question and that it will be impossible to comply with these ordinances in

County of Cook v. City of Chicago, 228 Ill. App. 498.

building such jail; that the city is threatening to use the police force of the city to prevent or stop the work of building the jail until and unless the same is built in accordance with plans approved by the city; that the city intends to stop the work by force and violence unless opposed by the sheriff of Cook County, in which case, it is alleged, bloodshed and loss of life would necessarily occur. It is further alleged that the county is advised that in constructing the jail or home in question it exercises a State function and that by statute it is made the mandatory duty of the county to construct the building as agent for the State, and that the city has no jurisdiction over the matter.

The defendant contends that by paragraphs 61, 62 and 63, of article 5, of chapter 24, Rev. St. [Cahill's Ill. St. ch. 24, ¶ 65, subdivs. 61, 62, 63] it is given the power and authority, as agent of the State, to regulate by ordinance the construction of buildings within the city limits; that this is not in conflict with the power and authority vested in the county board to erect and keep in repair jails, as provided for by paragraph 1 of section 26, ch. 34, Rev. St. [Cahill's Ill. St. ch. 34, ¶ 29] but that the power given the city is supplementary to the power granted to the county, and, therefore, while the county is required to construct and build jails it must do so, where the jail is located in Chicago, in accordance with the ordinances of the City of Chicago. And it is argued that the ordinance in no way conflicts with the statute; that unless the county in the construction of the jail is required to follow the building ordinances of the city it may foist upon the city a "fire trap"; that the city officials are better acquainted with local conditions and the peculiar circumstances surrounding the building than are the county authorities; that the lives and property and welfare of the city are likely to be jeopardized by the construction of a jail which is unsafe and of combustible material, and it is contended, as stated by defend-

ant's counsel, that the proposition involved is "where one municipality, as the agent of the State and in order to insure the safety of its inhabitants, has been given general police power to prescribe the mode of construction of buildings within its limits, so as to minimize the danger of calamities from fire, and has exercised such power by adopting fair and reasonable ordinances to that effect, can another municipality, also an agent of the State, which overlaps the other municipality in territorial area, but which has been given no such police power as above mentioned, erect buildings within the limits of the first mentioned municipality without complying with its building ordinances aforementioned?" The difficulty with this contention is that we have not before us the provisions of the building ordinances. Whether they are fair and reasonable, as counsel for the city assume, we cannot know judicially, and there is nothing in the record that will advise us except that it is alleged in the bill that it is impossible to build a proper jail under the provisions of the ordinances.

In reply to the suggestion that the county might build a fire trap within the city limits were it not required to comply with the building ordinances, we say that there is no such question presented to us by the record. But on the contrary it is averred in the bill and found by the decree that the jail or building which is being constructed by the county is in accordance with plans and specifications provided by the county architect; that it is suitable, sanitary, safe and proper in all respects and answers every need and requirement possible for the health, safety and convenience of the inmates of the jail consistent with their safekeeping and necessary discipline. No complaint is made that any of the allegations of the bill are but conclusions of the pleader, and we, therefore, assume that the allegations of the bill are admitted to be true. In these circumstances, it appears that the county

board, in accordance with the duty imposed upon it by statute, is erecting a jail which is sanitary, safe, suitable and proper in every respect. This would not imply that it would be a fire trap, but on the contrary we must assume that the building is being constructed of proper material in every respect, and we must further assume from this record that the county would be unable to construct a proper jail if it were required to comply with the provisions of the city building ordinances, because this is what is alleged in the bill. And we must assume on the record that this is so because we have not the city ordinances before us. If the ordinances were before us and it appeared, as the bill alleges, that it would be impossible to construct a proper jail according to the provisions of them, then they would be unreasonable and invalid in that respect. Of course, the county contends that it is not bound by the building ordinances of the city at all, but we do not think that question is properly before us. We might say in passing that there are two interesting cases in the books on this question: *Pasadena City School Dist. v. City of Pasadena,* 166 Cal. 7, 47 L. R. A. (N. S.) 892, and *Kentucky Institute for Education of Blind v. City of Louisville,* 123 Ky. 767, 8 L. R. A. (N. S.) 553.

On the record before us the decree of the superior court of Cook county is affirmed.

*Affirmed.*

THOMSON, P. J., and TAYLOR, J., concur.